William R. Hansen
Christopher R. Kinkade
Ryan N. Miller
V. Chisara Ezie
FOX ROTHSCHILD LLP
100 Park Avenue Suite 1500
New York, New York 10017
Telephone: (212) 878-7900
Facsimile: (212)  692-0940

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROOT FOUR IMAGINATION INC., MAURICE TUFF, and GREGORY BROWNE, <br><br> Plaintiffs, <br><br> -against- <br><br> LEXISNEXIS RISK SOLUTIONS INC., <br><br> Defendant. | Case No. <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiffs Root Four Imagination Inc. ("Root Four"), Maurice Tuff, and Gregory Browne (collectively, "Plaintiffs"), for their complaint against LexisNexis Risk Solutions Inc. ("LexisNexis"), allege as follows:

## NATURE OF THE CLAIM

1.      This is an action for damages and injunctive relief arising from LexisNexis' breaches of the parties' Mutual Nondisclosure Agreement ("MNDA"), API License Agreement ("API Agreement"), and Distribution and Sales Agreement ("D&S Agreement"), patent infringement under 35 U.S.C. § 271, and breaches of the parties' agreement related to patent ownership and designation of patent inventorship.

2.      Root Four manufactures sensors and develops associated firmware and software for the sensors ("Sensors") that connect to the OBD-II port on most automobiles produced since

1996 and on similar ports on large trucks and heavy equipment.  The Sensors and associated software and firmware are used for various purposes, including driver safety, monitoring driver behavior, vehicle telematics and usage based insurance (UBI), cellphone and text "blocking" while a vehicle is underway, fleet management, and vehicle diagnostics.  Information reported by the sensors can be used by the automobile's owner, insurance companies, repair services, fleet management companies, and other third parties.

3.      In 2012, Root Four entered into negotiations with LexisNexis regarding LexisNexis' purchase of Sensors and development of associated software.  The parties entered a mutual non-disclosure agreement ("MNDA") in May 2012 to facilitate these negotiations.  A true and correct copy of the MNDA is attached hereto as Exhibit A.

4.      LexisNexis wished to use the Sensors and resulting data for a proposed new program to provide driving data and information to insurance companies and their customers.  At this time LexisNexis had limited technical knowledge with respect to vehicle sensors and data reporting.

5.      One of the two agreements the parties entered into in January 2013 was the API Agreement, which gave LexisNexis certain time-limited, defined permissions to access and make use of Root Four's Sensor data via a nonpublic application program interface ("API") for the Sensors, which is needed to retrieve Sensor data.  That permission and right of use is premised solely on the API Agreement and ceased to exist when the agreement lapsed in January 2015.  A true and correct copy of the API Agreement is attached hereto as Exhibit B.

6.      The related D&S Agreement, also effective in January 2013, specified that LexisNexis "shall not modify its existing programs and products (developed under the API license) or develop new programs and products after the expiration of the API license."  (D&S

Agreement § 8.5).  A true and correct copy of the D&S Agreement is attached hereto as Exhibit C.

7.     Beginning in the fall of 2014 and continuing to the present, the parties could not agree on renewal terms for the API Agreement and D&S Agreement, and those agreements, pursuant to their terms, expired in January 2015.  Since that time, LexisNexis has maintained that it is permitted to modify its existing programs and products developed under the API Agreement and develop new programs and products, violating the terms of both agreements and infringing upon Root Four's intellectual property and trade secrets.

## PARTIES

8.     Root Four Imagination Inc. ("Root Four") is a Canadian corporation. Its principal place of business is 1027 Topsail Road, Mount Pearl, Newfoundland and Labrador, Canada A1N 5E9.

9.     Maurice Tuff is a Canadian citizen.  He is the founder and CEO of Root Four.

10.     Gregory Browne is a Canadian citizen.  He is Vice President of Engineering at Root Four.  He has been employed by Root Four since July 23, 2007.

11.     LexisNexis is a corporation incorporated in the State of Georgia.  Its principal place of business is 1000 Alderman Drive, Alpharetta, Georgia 30005.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as it includes claims that arise under the Patent Act, and 28 U.S.C. § 1332, as this is a civil action between completely diverse parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     The parties consented to "submit themselves to the jurisdiction and venue of any appropriate court in the Borough of Manhattan and State of New York to resolve any and all

disputes" arising from the API License Agreement.  *See* Exh. B at § 11.  Additionally, defendant LexisNexis is registered to do business in the State of New York, and has appointed a domestic agent for service of process.   Furthermore, upon information and belief, LexisNexis has committed acts of infringement in this District and has established business in this District, under 28 U.S.C. § 1400.

**FACTUAL BACKGROUND**

**Root Four's Vehicle Monitor Technology**

14.     Maurice Tuff, CEO and founder of Root Four, began development of Root Four's vehicle monitoring, telematics, and UBI technology over six years before Root Four entered into any agreements with LexisNexis.

15.     Root Four was founded with a vision and passion for using technology to promote safe driving and placed an emphasis in applying its technology to the insurance and driving monitoring market.

16.     Root Four's first product, called "SafeDriver", focuses on teen driver safety. Another early Root Four product, called "AlertDriver" focuses on safety and driving monitoring, providing alerts, for example, if the operating speed of the vehicle was too fast. Root Four's "EconoDriver" focuses on fuel economy as a complement to its established safe driving products. Root Four's BlueDriver product leverages the increasing ubiquity of Bluetooth-capable smartphones to allow for the transfer and storage of vehicle information. Thus, Root Four had a focus on safe driving and driver monitoring long before its business deals with LexisNexis.

17.     Indeed, on April 10, 2007, Maurice Tuff filed U.S. Patent Application Serial Number US 11/733,392 entitled Vehicle Monitor, which includes disclosure and claims directed to monitoring a vehicle, including ways of determining and providing notification whether "tampering," has occurred, i.e. whether any count differential exists between the sensor and a

portable device, thereby indicating that the vehicle has been in operation without being monitored.  This patent issued as U.S. Patent No. 7,853,375 ("the '375 Patent") on December 14, 2010.  A true and correct copy of the '375 Patent is attached as Exhibit D.

18.     On October 16, 2008, Mr. Tuff filed a continuation-in-part Patent Application Serial Number US 12/252,884 also entitled Vehicle Monitor, which includes disclosure and claims directed to monitoring a vehicle, including ways of determining whether "tampering," i.e., whether any count differential has occurred and providing notification of the same.  This patent issued as U.S. Patent No. 8,180,522 ("the '522 Patent") on May 15, 2012.  A true and correct copy of the '522 Patent is attached as Exhibit E.  (The '375 Patent and the '522 Patent are collectively referred to as the "Root Four Patents.")

19.     Root Four developed, manufactures, and sells Sensors under its Lemur Vehicle Monitors brand.  One form of Sensor is an OBD-II sensor that connects to a standard port on modern automobiles to provide vehicle information to its owner or to third parties, such as technicians, fleet managers and insurance companies.  The Sensor can connect to smartphones and tablets using the Bluetooth wireless protocol.

20.     Users of the Sensor can also download a Root Four smartphone application ("app") which will allow them to monitor the vehicle and review data received from the Sensor.

21.     In addition to selling the Sensors directly to retail customers under the Lemur Vehicle Monitors brand and branded apps, Root Four partners with third parties to sell the Sensors under the third parties' brands, and provides engineering support so that third parties can market their own apps to communicate with the Sensors.  This can include a "complete solution" product under which Root Four provides to the third party the Sensor, app and back-end data management.

22.     The communication between the Sensors, which gathers vehicle data, and the app is governed by Root Four's application program interface ("API"). Without a license from Root Four, a third party is not permitted to develop and publish its own software application to communicate with Root Four's Sensors.

23.     Root Four does not permit access to its Sensors via the API outside of a license agreement between itself and the third-party partner.

**Agreements between Root Four and LexisNexis**

24.     LexisNexis initially contacted Root Four on or about April 19, 2012, when LexisNexis was seeking solutions for its intended vehicle telematics program for insurance companies.  The parties then executed the MNDA. *See* Exh. A.

25.     The MNDA applied to "all information relating to the Disclosing Party's business, including, without limitation, technical, business, financial, customer and product information, product development plans, forecasts, strategies and related information, computer programs, technical drawings, algorithms, know-how, processes, ideas, inventions (whether patentable or not), schematics, Trade Secrets and other information (whether written or oral), to the extent disclosed to the Receiving Party (the 'Proprietary Information')."  (MNDA § 1.)

26.     In the MNDA, LexisNexis agreed to hold Root Four's Proprietary Information in strict confidence, not to disclose it to any third party, and not to use it other than to evaluate it for the purpose of the MNDA.  (*See* MNDA § 2.)

27.     The MNDA remained in effect for two years, and its confidentiality obligations remained in effect for three years after termination or expiration, with the confidentiality obligations with respect to Trade Secrets remaining in effect for as long as such information

remains a Trade Secret.  (*See* MNDA § 6.)  Accordingly, the confidentiality obligations of the MNDA were in effect at all times relevant to this Complaint, and remain in effect today.

28.     The MNDA requires that the "prevailing party in any action to enforce [the MNDA] shall be entitled to actual costs and reasonable attorneys' fees." (*See* MNDA § 9).

29.     From June 2012 until January 2013, pursuant to the MNDA, Root Four provided valuable confidential and trade secret information to LexisNexis in furtherance of the parties' anticipated business relationship.  For example, LexisNexis was in need of a solution to detect tampering with its telematics device, or determining if a driver's phone was left outside of the car during a trip.  Root Four provided solutions to these and other issues.

30.     Beginning in or about November 2012, Root Four and LexisNexis began negotiating the terms of the API Agreement, while Root Four continues to provide LexisNexis with proprietary and trade secret information pursuant to the MNDA.

31.     Root Four and LexisNexis entered into the API Agreement on January 9, 2013, under the terms of which Root Four would provide access to the API for LexisNexis so that LexisNexis could "develop and publicly publish applications . . . that communicate with ROOT FOUR's BlueDriver Sensor (the 'Product')."  (API Agreement § 1.)

32.     The API Agreement restricted LexisNexis' rights in several respects.

33.     LexisNexis was granted a license "to obtain data from Product as per the provided API documentation," but otherwise was not granted any rights in or to the API or the Products. (*See* API Agreement § 5.1.)

34.     Pursuant to § 5.2 of the API Agreement, "ROOT FOUR does not grant to LEXISNEXIS a license, either expressed or implied, to any Bluetooth protocols, intellectual

property, designs, schematics, functional code, libraries or firmware in connection with the Product." (API Agreement § 5.2.)

35.      The API Agreement imposes further limitations on LexisNexis under § 5.3, which mandates that "LEXISNEXIS will not reverse engineer, decompile or disassemble the Product, including its firmware and/or libraries on Product." (API Agreement § 5.3.)

36.      The API Agreement expressly states that Root Four "retains all right, title, and interest in and to the intellectual property embodied in its Product and API and developments including any modification and derivations that may arise." (API Agreement § 5.4.)

37.      LexisNexis was to retain rights only to "the intellectual property embodied in its products, services and developments, and any software or any other intellectual property created or developed by LEXISNEXIS to be used in conjunction with the Product. (API Agreement § 5.5.)

38.      Accordingly, under the API Agreement, LexisNexis was permitted only to access and obtain data from the API for purposes of developing applications to work with Root Four's sensors, which applications would be owned by LexisNexis, while Root Four would retain all rights to the API, the sensors, and any modifications thereof.

39.      In the API Agreement, LexisNexis also agreed that it would not disclose or transfer any confidential information or materials received from Root Four to any third party and would use such confidential information and materials solely for the purpose of performing its obligations under the API Agreement. (API Agreement § 10.)

40.      While Root Four continued to work with LexisNexis and supply LexisNexis with proprietary and trade secret information pursuant to the MNDA and API Agreement, the parties also began negotiating the D&S Agreement to govern the parties' relationship with respect to the

purchase and distribution of Sensors and the related software development utilizing the API. The parties executed the D&S Agreement on March 19, 2013, and made the D&S Agreement effective as of January 25, 2013.  (*See* D&S Agreement at 1.)

41.     Once again, the D&S Agreement provided strict limitations on LexisNexis' use of Root Four's proprietary information, sensors, and API.  The D&S Agreement specifies, for example, that while, "Root Four provides a nonexclusive, perpetual, irrevocable, worldwide, fully paid and nontransferable right and license for [LexisNexis] *to obtain data* from any purchased Products" (D&S Agreement § 8.2) (emphasis added), it also clearly states that "[LexisNexis] *shall not modify* its existing programs and products (developed under the API license) *or develop new programs and products* after the expiration of the API license."  (D&S Agreement § 8.5) (emphasis added).

42.     The D&S Agreement expressly preserved Root Four's "right, title, and interest in and to the intellectual property embodied in its Product, API and developments including any modification and derivations that may arise."  (D&S Agreement § 8.4.)

43.     While LexisNexis had the right to obtain data from purchased Root Four Products after expiration of the D&S Agreement, and LexisNexis and its end users retained the right to continue using LexisNexis' programs and products, LexisNexis was expressly prohibited from modifying existing or developing new programs and products after expiration of the API license. (D&S Agreement §§ 8.2, 8.5.)

44.     LexisNexis also agreed in the D&S Agreement to not disclose any confidential information to any third party and to use such confidential information only for the purposes of implementing the D&S Agreement.  (D&S Agreement § 14.15.)

45.     The parties also agreed that the ownership provisions of § 8 and the confidentiality provisions of § 14, *inter alia*, would survive termination of the D&S Agreement. (D&S Agreement § 13.6.)

46.     Root Four was determined that it and its advanced products and telematics technology not be merely a stepping stone in LexisNexis's development of its automobile telematics (usage based insurance) business and, for this reason, required LexisNexis to agree in the D&S Agreement not to develop new programs and products after the expiration of the API License.

47.     Despite a reasonably fruitful and positive business relationship during the first year of the agreements, the parties could not agree, in the fall of 2014, on terms to renew the agreements for a third year.

48.     On or around November 4, 2014, LexisNexis sent a "Notice of Separation" to Root Four via email.

49.     In an apparent effort to invoke the dispute resolution process contained in the D&S Agreement (D&S Agreement §14.11), between November 21, 2014 and January 12, 2015 LexisNexis provided Root Four with several fundamentally improper iterations of a document purporting to be a purchase order.

50.     Because the parties failed to execute a renewal of the agreements, the API Agreement expired on January 8, 2015 and the D&S Agreement expired on January 24, 2015.

51.     Following the expiration of these agreements, Root Four allowed LexisNexis to continue using purchased Sensors with LexisNexis' associated app but revoked LexisNexis's permissions for the Apple and Google Play app stores to distribute any updates of the app.

52.     By letter dated January 12, 2015, Root Four notified LexisNexis that, under § 8.5 of the D&S Agreement, it was no longer permitted to modify software developed under the API license, which included LexisNexis's apps, web portals, and analytics programs.

53.     On or about January 23, 2015, having attempted to create a conflict and pressure through its improper purchase orders, LexisNexis initiated the D&S Agreement's "Dispute Resolution" process (D&S Agreement § 14.11).  LexisNexis did so, even though both the API Agreement and D&S Agreement had by that point expired.

54.     Root Four responded and attempted to resolve the dispute amicably and in accordance with the specified process, but LexisNexis did not proceed in good faith. Through a series of e-mails, telephone, and in-person communications, LexisNexis rejected Root Four's straight-forward reading of the unambiguous agreements, claiming that LexisNexis was somehow entitled to modify its programs and products freely and develop new programs and products, despite the express language of the parties' agreements.

**Confidentiality Breaches**

55.     Unbeknownst to Root Four, LexisNexis had already all but finalized a deal with a replacement vehicle sensor provider known as TrakM8, a process that LexisNexis started during the first months of the supposedly exclusive period of the Root Four-LexisNexis relationship.

56.     The API Agreement and the D&S Agreement each bound LexisNexis to abide by specified confidentially measures.

57.     In the process of finalizing the TrakM8 deal, LexisNexis disclosed Root Four's confidential information to TrakM8 prohibited from disclosure under the terms of API Agreement and the D&S Agreement.

11

58.     Materials produced by LexisNexis during document discovery in a pending civil action, No. 15 Civ. 3223 (PAE), reveal that LexisNexis disclosed confidential information developed by Root Four and disclosed to LexisNexis for the purposes of implementing the D&S Agreement to at least two entities: United Kingdom-based TrakM8 and China-based Zhiyi Information Technology ("Zhiyi"), neither of which was a party to the D&S Agreement or was consented to by Root Four, and both of which are competitors of Root Four.

59.     Upon information and belief, LexisNexis has disclosed Root Four confidential information to additional third parties in violation of the agreements entered into with Root Four, including but not limited to Wunelli Ltd., which LexisNexis now owns.

60.     LexisNexis has now partnered with one or more of these third parties to produce devices incorporating and founded upon Root Four's proprietary, trade secret, and confidential information and know-how, which LexisNexis would not have been privy to absent Root Four's disclosure in furtherance of the MNDA, API Agreement, and D&S Agreement.

61.     Under § 14.15 of the D&S Agreement, entitled **Proprietary Information**, "Neither party will permit any information ('**Confidential Information**'), (a) which is specifically and conspicuously identified by the other party as proprietary… *or (b) which the receiving party should have known from the nature of the material was proprietary to the disclosing party*, to be disclosed or communicated to any other entity which is not party to this Agreement without (i) the prior written consent of the disclosing party, and (ii) fulfilling such conditions as such disclosing party may prescribe."   (D&S Agreement § 14.15) (emphasis added).

62.   The D&S Agreement further requires, "each party will use the other party's Confidential Information *only* for the purposes of implementing *this Agreement.*"   (D&S Agreement § 14.15) (emphasis added).

63.   For the purposes of the D&S Agreement, Confidential Information, "without limitation to the foregoing" "includes *but is not limited* to any input from [LexisNexis] and input from End Users, [LexisNexis] business information, any orders, and any identity or contract information for such End User(s)."  (D&S Agreement § 14.15) (emphasis added).

64.   Similarly, § 10 of the API Agreement requires: "[N]either party shall disclose or transfer Confidential Information or Confidential Materials received from the other party.  A party receiving Confidential Materials under this Agreement may *only use* the Confidential Materials and Confidential Information *for the purpose of performing its obligations* under *this Agreement.*"  (API Agreement § 10) (emphasis added).

65.   For the purposes of the API Agreement, Confidential Materials is defined as "any and all tangible media which is either clearly marked 'CONFIDENTIAL' or would be deemed confidential by a *reasonable person receiving such information* and is provided by one party to the other under this agreement."  (API Agreement § 10) (emphasis added).

66.   Given the importance of protecting confidentiality, under API Agreement the parties agreed "that any breach of this provision by the other would cause irreparable injury not adequately compensable with monetary damages."  (API Agreement § 10.)

**Patents and Technology**

67.   Between May 2012 and March 2013, after Root Four and LexisNexis had entered into the MNDA, numerous communications regarding Root Four's technology and its use were sent between Root Four and LexisNexis.

68.     For example, in June 2012, Root Four provided LexisNexis with documentation for Root Four's API, including a disclosure of an API command capable of retrieving an OBD-II sensor's device session ID.

69.     In December 2012, Root Four instructed LexisNexis on using the device session ID to determine whether power has been cycled indicating that the sensor was unplugged from the ODBII port (i.e. a tampering event).

70.     Also in December 2012, Root Four proposed a potential change to the Sensor to allow for the calculation of mileage traveled from the speed reported by the vehicle, for the purpose of providing an alternative method for detecting tampering events.  As a direct result of this disclosure, modifications were made by Root Four to the Sensor and the API to record session counters that identified the ignition on time (i.e., a counter, measured as time in seconds).

71.     These are but a few examples of proprietary information of Root Four that LexisNexis only came into possession of by virtue of the confidentiality agreements with Root Four.

72.     In December 2012, shortly before execution of the D&S Agreement, Root Four provided LexisNexis with copies of the '375 and '522 Patents, expressly noting these patents cover Root Four's technology.

73.     Gregory Browne, who was employed by Root Four on or about July 23, 2007, and thereafter became a development engineer, collaborated with Maurice Tuff and LexisNexis in the technology used by LexisNexis under the D&S Agreement, actively participating in design meetings and calls, and developing the firmware modifications on the Root Four Sensor to be used by LexisNexis.

74.     Under the D&S Agreement, LexisNexis agreed that "ROOT FOUR retains all right, title, and interest in and to the intellectual property embodied in its Product and API and developments including any modification and derivations that may arise." (D&S Agreement § 5.4).

75.     On January 24, 2011, LexisNexis filed U.S. Patent Application Serial No. 13/012,400 ("the '400 Application").  The '400 Application lists Charles Kaminski and Ash Hassib as inventors and generally covered systems and methods of determining vehicle usage patterns of a driver using location tracking capabilities of a mobile phone. The '400 Application published on July 26, 2012 as U.S. Patent Application Publication No. 2012/0191481 ("the '481 Publication"), a true and correct copy of which is attached as Exhibit F.  The '400 Application was eventually abandoned for failure to respond to an Office Action rejecting all claims.

76.     On January 13, 2012, LexisNexis filed U.S. Patent Application Serial No. 13/350,388 ("the '388 Application").  The '388 Application lists Charles Kaminski and Ash Hassib as inventors and claims priority as a continuation-in-part of the '400 Application.  The '388 Application published on August 16, 2012 as U.S. Patent Application Publication No. 2012/0209632 ("the '632 Publication), a true and correct copy of which is attached as Exhibit G. The '388 Application was eventually abandoned for failure to respond to an Office Action rejecting all claims.

77.     On December 18, 2012, LexisNexis filed U.S. Provisional Patent Application No. 61/738,436 ("the '436 Provisional").  The '436 Provisional contained subject matter related to reading and visualizing ODB data and includes disclosure of a "SessionID" defined as "GUID Session identifier for EACH application startup." Ash Hassib and Aaron Pierce are listed as

inventors of the '436 Provisional.  A true and correct copy of the '436 Provisional is attached as Exhibit H.

78.    During the term of the D&S Agreement, unbeknownst to Root Four, on March 12, 2013, LexisNexis filed U.S. Patent Application Serial No. 13/796,717 ("the '717 Application"), which issued as U.S. Patent No. 9,164,957 ("the '957 Patent") on October 20, 2015.  Ash Hassib, who was personally aware of Root Four's '375 and '522 Patents and was one of Root Four's primary contacts at LexisNexis for the disclosure of Root Four confidential information pursuant to the agreements, was listed as the first-named inventor of the LexisNexis '957 Patent.  The '957 Patent also names Charles Kaminski and Aaron G. Pierce as inventors.  A true and correct copy of the '957 Patent is attached as Exhibit I.

79.    The '957 Patent claims priority to the '436 Provisional and the '400 and '388 Applications.  However, the '957 Patent contains significant additional disclosure compared to its priority applications.  Specifically, the '957 Patent includes disclosure relating to the capture and transmission of vehicle operational and identification information.  This new disclosure in the '957 Patent directly corresponds to the Root Four confidential information shared with LexisNexis between May 2012 and March 2013.

80.    The claims of the '957 Patent are not supported by the specification of the '436 Provisional, the '400 Application, or the '388 Application, such that the '957 Patent is not entitled to the benefit of a priority date earlier than its own filing date.

81.    During the term of the D&S Agreement, unbeknownst to Root Four, on June 4, 2013, LexisNexis filed U.S. Patent Application Serial No. 13/909,816 ("the '816 Application"), which issued as U.S. Patent No. 8,928,495 ("the '495 Patent") on January 6, 2015.  A true and correct copy of the '495 Patent is attached as Exhibit J.

82. The '495 Patent claims priority to the '717 Application and has the same named inventorship including Ash Hassib, who was personally aware of Root Four's '375 and '522 Patents and Root Four's confidential information, as described above.

83. The claims of the '495 Patent are not supported by the specification of at least the the '436 Provisional, the '400 Application, or the '388 Application, such that the '495 Patent is not entitled to the benefit of a priority date earlier than the filing date of the '717 Application, and possibly not earlier than the filing date of the '816 Application.

84. Additionally, on August 28, 2015, LexisNexis filed U.S. Patent Application Serial No. 14/838,508 ("the '508 Application"), which is pending and was published on December 31, 2015, as U.S. Publication No. 2015/0379789 ("the '789 Publication"). The '508 Application is a continuation of the '717 Application. Ash Hassib, Charles Kaminski, and Aaron Pierce are the named inventors on the '789 Publication. A true and correct copy of the '789 Publication is attached as Exhibit K.

85. Upon information and belief, the claimed inventions of the '495 Patent, '957 Patent, and '789 Publication consist of, or at least comprise, Root Four's confidential and proprietary information that was made known to LexisNexis only by virtue of Root Four's disclosures pursuant to the MNDA, API Agreement, and D&S Agreement and were not otherwise independently developed by LexisNexis.

86. Upon information and belief, LexisNexis sells and markets a system for automotive telematics data collection and analysis for use in usage-based insurance programs. The system includes a mobile application titled LexisNexis Telematics Mobile or LexisNexis Telematics Driver. The system further includes a vehicle sensor that reads vehicle data that is

then wirelessly communicated to a smartphone running one of the LexisNexis Telematics applications.

87.     Upon information and belief, LexisNexis supplies its insurance industry customers with access to its mobile software platform and with devices for use in its automotive telematics data collection system.

88.     Upon information and belief, LexisNexis supplies its insurance industry customers with instructions describing how they and their end users (for example, insurance policy holders) can use the LexisNexis automotive telematics data collection system and platform to read, view, and transmit automotive telematics collected from sensors attached to the vehicle or sensors included in another computing device, for example a smart phone.

89.     LexisNexis provides its applications, products, and instructions to customers with full knowledge of Root Four's patent rights, and that the LexisNexis applications and products are built upon Root Four's confidential information, invented and developed by Maurice Tuff and Gregory Browne.

## FIRST CAUSE OF ACTION
### (Correction of Inventorship under 35 U.S.C. § 256)

90.     Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

91.     By virtue of the previously mentioned conduct of LexisNexis, the identity of the true inventors of the inventions described and claimed in the '495 Patent and the '957 Patent and any related applications or patents was omitted by LexisNexis in violation of 35 U.S.C. § 116.

92.     Maurice Tuff and Gregory Browne conceived of and formed a definite and permanent idea of the complete and operative invention described and claimed in the '495 Patent and the '957 Patent.

93.     Maurice Tuff and Gregory Browne provided technical information and knowledge to LexisNexis employees, including but not limited to Ash Hassib and Aaron Peirce, starting in May of 2012.

94.     The information and knowledge Maurice Tuff and Gregory Browne provided to LexisNexis employees ultimately was included in the '957 Patent, filed on March 12, 2013 as the '717 Application, and the '495 Patent, filed on June 4, 2013 as the '816 Application.  Ash Hassib, Aaron Peirce, and Charles Kaminski are listed as inventors on the '495 and '957 Patents.

95.     On information and belief, Ash Hassib, Aaron Peirce, Charles Kaminski did not contribute any more than ordinary skill to reduce to practice the subject matter, conceived of and invented by Maurice Tuff and Gregory Browne, that is claimed in the '495 and '957 Patents.

96.     In the alternative, Maurice Tuff and/or Gregory Browne conceived of and contributed to the subject matter of at least one claim of the '495 and '957 Patents sufficient to qualify as co-inventors.

97.     Root Four has an interest in correcting inventorship of the '495 and '957 Patents because both Maurice Tuff and Gregory Browne have assigned and agreed to assign all inventions they create as a result of their employment at Root Four.  Root Four also has an interest in the inventorship and ownership of the '495 and '957 Patents because, as modifications and derivatives of Root Four technology, they are owned, in their entirety, by Root Four under § 5.4 of the API Agreement.

98.     Root Four has been injured by the omission of Maurice Tuff and Gregory Browne as inventors of the '495 and '957 Patents.  Root Four's injury includes loss of revenue related to licensing the patented technology, among other economic injuries.

99.     Maurice Tuff has been injured by the omission of his name from the '495 and '957 Patents and this injury includes economic injury from the lack of royalties or other monetary payment for the invention of the claimed subject matter and injury to his reputation.

100.    Gregory Browne has been injured by the omission of his name from the '495 and '957 Patents and this injury includes economic injury from the lack of royalties or other monetary payment for the invention of the claimed subject matter and injury to his reputation.

101.    The injuries to Root Four, Maurice Tuff, and Gregory Browne were caused by the omission, on the part of LexisNexis, of Maurice Tuff and Gregory Browne as inventors of the '495 and '957 Patents.

102.    For the reasons previously discussed herein, Plaintiffs Maurice Tuff and Greg Browne are entitled to a judgment, pursuant to 35 U.S.C. § 256, that they are the sole inventors, or at least co-inventors, of the inventions described and claimed in the '495 Patent and the '957 Patent and any related applications or patents and to an order that the Director of the U.S. Patent and Trademark Office correct the aforementioned patents to add Maurice Tuff and Gregory Browne as named inventors and to remove any inventors who did not, in fact, contribute to the conception of the claimed subject matter of the '495 Patent and the '957 Patent.

### SECOND CAUSE OF ACTION
**(Declaration under 28 U.S.C. § 2201 of Patent Ownership)**

103.    Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

104.    By virtue of the conduct of LexisNexis as set forth herein, a controversy exists between Root Four and LexisNexis as to the legal and equitable title to the inventions described and claimed in the '495 Patent and the '957 Patent and any related applications or patents.

105.    Since both Mr. Tuff and Mr. Browne conceived of the inventions described and claimed in the '495 Patent and the '957 Patent and because they have assigned to Root Four all intellectual property arising from the invention of the automobile sensor and monitoring technology they developed, Root Four is the proper owner of the '495 Patent and the '957 Patent.

106.    Additionally, the subject matter of the '495 Patent and the '957 Patent amount to modifications and derivatives of Root Four technology and are owned, in their entirety, by Root Four under § 5.4 of the API Agreement.

107.    By virtue of the conduct of LexisNexis as set forth herein, Root Four is entitled to a declaratory judgment that it is the legal and equitable owner of all right, title and interest in the inventions described and claimed in the '495 Patent and the '957 Patent and any related applications or patents.

108.    In the alternative, Root Four is entitled to a declaratory judgment that it is at least a co-owner, and tenet-in-common with LexisNexis, of an undivided whole of the '495 Patent and the '957 Patent and any related applications or patents.

## THIRD CAUSE OF ACTION
### (Breach of Contract – Violation of Distribution & Sales Agreement's Proprietary Information Non-Disclosure Provisions)

109.    Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

110.    The parties' D&S Agreement, specifically § 14.15, expressly prohibits the dissemination of either party's confidential information to third parties: "Neither party will permit any information ('Confidential Information') . . . to be disclosed or communicated to any entity which is not a party to this Agreement . . . . Each party will use the other party's Confidential Information only for the purposes of implementing this Agreement."

111.    As discussed herein, LexisNexis disclosed confidential information developed by Root Four outside of the scope of the D&S Agreement to at least two entities, UK-based TrakM8 and Chinese company Zhiyi Information Technology ("Zhiyi"), which were not parties to the D&S Agreement, and indeed are direct competitors of Root Four.

112.    Upon information and belief, LexisNexis transmitted confidential information to Zhiyi at an unsecured Gmail address, and Zhiyi's corporate headquarters appears to be little more than the local equivalent of a post office box in Shanghai. This does not comport with commercial best practices for transmitting confidential information, even if such transmission was proper and authorized, and this was not.

113.    During the parties' contractual exclusivity period, LexisNexis disclosed, *inter alia*, Root Four's technical solutions for features and functionality of its OBD-II sensors; information that Root Four developed either independently of LexisNexis or under the terms of the D&S Agreement and its confidentiality provisions. These unauthorized disclosures gave TrakM8 and Zhiyi a greater ability to compete with Root Four than they would have had without this information.

114.    Upon information and belief, LexisNexis made additional improper disclosures of Root Four confidential information to additional third parties, such as but not limited to Wunelli Ltd.

115.    In addition to being an express breach of the D&S Agreement, these disclosures harmed Root Four by providing competitors and others with confidential information developed by Root Four that allowed Root Four a competitive edge in the market. These unauthorized disclosures by LexisNexis enabled Root Four's competitors to more effectively compete against

Root Four, and further enabled LexisNexis to unjustly benefit from Root Four's confidential disclosures pursuant to and in furtherance of the D&S Agreement.

116.    LexisNexis has breached the D&S Agreement and Root Four is entitled to compensatory damages and injunctive relief.

## FOURTH CAUSE OF ACTION
### (Breach of Contract – Improper Disclosures in Violation of API Agreement's Confidential Information and Confidential Materials Provision)

117.    Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

118.    The parties' API Agreement, specifically §10, expressly prohibits the dissemination of either party's confidential information to third parties: "[N]either party shall disclose or transfer Confidential Information or Confidential Materials received from the other party. A party receiving Confidential Materials under this Agreement may only use the Confidential Materials and Confidential Information for the purpose of performing its obligations under this Agreement."

119.    As discussed herein, LexisNexis disclosed confidential information developed by Root Four outside of the scope of the D&S Agreement to at least two entities, UK-based TrakM8 and Chinese company Zhiyi Information Technology ("Zhiyi"), which were not parties to the D&S Agreement, and indeed are direct competitors of Root Four.

120.    During the parties' contractual exclusivity period, LexisNexis disclosed, *inter alia,* Root Four's technical solutions for features and functionality of its OBD-II sensors; information that Root Four developed either independently of LexisNexis or under the terms of the API Agreement and its confidentiality provisions. These unauthorized disclosures gave TrakM8 and Zhiyi a greater ability to compete with Root Four than they would have had without this information.

121.    Upon information and belief, LexisNexis made additional improper disclosures of Root Four confidential information to additional third parties, such as but not limited to Wunelli Ltd.

122.    In addition to being an express breach of the API Agreement, these disclosures harmed Root Four by providing competitors and others with confidential information developed by Root Four that allowed Root Four a competitive edge in the market. These unauthorized disclosures by LexisNexis enabled Root Four's competitors to more effectively compete against Root Four, and further enabled LexisNexis to unjustly benefit from Root Four's confidential disclosures pursuant to and in furtherance of the API Agreement.

123.    LexisNexis has breached the API License Agreement and Root Four is entitled to compensatory damages and injunctive relief.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract – Improper Disclosures in Violation of Mutual Nondisclosure**
**Agreement's Proprietary Information Provision)**

124.    Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

125.    The parties' MNDA, specifically § 2, expressly prohibits divulgence of Root Four's Proprietary Information (as defined therein) to any third person or use of such Proprietary Information except for the Purpose (as defined therein) of the MNDA.

126.    Pursuant to § 6 of the MNDA, the confidentiality period continues for a period of three years after termination or expiration of the MNDA, and indefinitely in the case of Trade Secret (as defined therein) information.  Accordingly, the confidentiality period was in full force and effect at all relevant times, and is at least in some respects still in effect.

127.    As discussed herein, LexisNexis disclosed confidential information developed by Root Four outside of the scope of the D&S Agreement to at least two entities, UK-based TrakM8

and Chinese company Zhiyi Information Technology ("Zhiyi"), which were not parties to the D&S Agreement, and indeed are direct competitors of Root Four.

128.    Upon information and belief, LexisNexis made additional improper disclosures of Root Four confidential information to additional third parties, such as but not limited to Wunelli Ltd.

129.    In addition to being an express breach of the MNDA, these disclosures harmed Root Four by providing competitors and others with confidential information developed by Root Four that allowed Root Four a competitive edge in the market. These unauthorized disclosures by LexisNexis enabled Root Four's competitors to more effectively compete against Root Four, and further enabled LexisNexis to unjustly benefit from Root Four's confidential disclosures pursuant to and in furtherance of the MNDA.

130.    LexisNexis has breached the API License Agreement and Root Four is entitled to compensatory damages and injunctive relief.

## SIXTH CAUSE OF ACTION
### (Infringement of the '375 Patent)

131.    Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

132.    The '375 Patent, titled "Vehicle Monitor," was duly and legally issued on December 14, 2010 to Maurice Tuff, and is currently in full force and effect and has been since the date of issuance.

133.    Upon expiration of the API Agreement and the D&S Agreement, LexisNexis continued selling, offering to sell, and/or imported hardware, systems, and software which infringe and/or the use of which by LexisNexis and/or its customers infringe the '375 Patent.

134. LexisNexis sold, offered to sell, and/or imported these hardware and software systems with actual knowledge of the '375 Patent and of the hardware elements and method steps which constitute infringement of the '375 Patent at least as of December 20, 2012. The software and products offered for sale, sold, and/or imported into the United States include LexisNexis Telematics Mobile and/or Lexis Nexis Telematics Driver, which in conjunction with the other devices is capable of retrieving and displaying automotive sensor information.

135. A representative claim of the '375 patent and a chart showing how the Accused Products infringe and/or the use of which by LexisNexis and/or its customers infringe the '375 Patent is provided below.

| Claim 30 | Accused Instrumentalities |
|---|---|
| A portable device for displaying at least one vehicle statistic for a vehicle, the portable device comprising: | A smartphone having LexisNexis Telematics Mobile or LexisNexis Telematics Driver installed and running is a "portable device for displaying at least one vehicle statistic for a vehicle." |
| a transceiver configured to communicate with a separate sensor unit that is connectable to an OBD-II port of the vehicle and continually collects at least one vehicle statistic by receiving the at least one vehicle statistic from a sensor built into the vehicle; | The smartphone includes Bluetooth capable transceiver that can be paired with an ODB-II device for the continuous collection of the vehicle statistic. |
| a processor configured to control the portable device and automatically (i) request and receive the at least one vehicle statistic, (ii) wait for a period of time after requesting and receiving the at least one vehicle statistic, and (iii) after waiting, repeat steps (i) and (ii) continuously; and | The smartphone includes a processor capable of performing the instructions required for data acquisition. |
| a display for continuously displaying the at least one vehicle statistic, wherein the processor is configured to repeatedly update the at least one vehicle statistic that is displayed on the display as the at least one vehicle statistic is repeatedly received by the processor; | The smartphone includes a display for continuously displaying the vehicle statistic. |
| wherein, the portable device is a handheld device; and | The smartphone is a handheld device. |

| wherein the vehicle statistic is at least one of speed, distance, acceleration, deceleration, and revolutions per minute. | Speed, distance, acceleration, deceleration, and revolutions per minute are common vehicle statistics that can be reported on the smartphone. |
| --- | --- |

136.    LexisNexis, since at least December 20, 2012, had actual knowledge of the '375 Patent.  LexisNexis had actual knowledge that, by continuing to use the technology provided by Root Four after the expiration of the parties' agreements, it was engaging in infringing activities. LexisNexis, therefore, specifically intended to engage in infringing actions.

137.    LexisNexis provides its customers and end-users with instructions and FAQs that describe how to troubleshoot issues related to the collection of data using a mobile app and an OBD-II compatible vehicle sensor device.  A true and correct copy of such an FAQ posted on the LexisNexis website is attached as Exhibit L.

138.    Plaintiffs have been damaged as a result of Defendant's acts of patent infringement in an amount to be determined at trial.

139.    Plaintiffs will suffer imminent and irreparable injury unless this Court enjoins LexisNexis from further acts of infringement.

140.    Defendant's acts of infringement have been carried out deliberately and willfully and without the consent of Plaintiffs.

141.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by marking their products with the '375 Patent.

142.    This is an exceptional case entitling Plaintiffs to an award of attorneys' fees under 35 U.S.C. § 285.

143.    In light of the above facts and allegations, Defendant LexisNexis is infringing and has infringed the '375 Patent in violation of 35 U.S.C. § 271, by developing, using, offering to sell, and/or selling in the United States or importing into the United States computer software

and/or hardware and/or systems, and/or by engaging in or practicing in the United States methods or processes covered by the '375 Patent.

144.    Defendant LexisNexis is infringing and has infringed the '375 Patent by offering to sell or selling within the United States or importing into the United States a component of a product or system that falls within the scope of the '375 Patent, or a material or apparatus for use in practicing a method or process that falls within the scope of the '375 Patent, constituting a material part of the '375 Patent, knowing the same to be especially made or especially adapted for use in an infringement of the '375 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

145.    Defendant LexisNexis infringes the '375 Patent by actively inducing direct infringement of the '375 Patent by third parties.

146.    Defendant LexisNexis actively encourages its customers to purchase third party equipment for uses which contribute to the direct infringement one or more claims of the '375 Patent.

147.    Defendant LexisNexis is selling, offering for sale, importing and has sold, imported, and delivered software and hardware products and systems to customers inside the United States and this District which are used by those customers to directly infringe at least one claim of '375 Patent.

148.    Defendant LexisNexis actively induces its customers to directly infringe systems and methods covered by the '375 Patent by encouraging and training those customers to combine software (e.g., the LexisNexis Telematics Mobile app) running on a smartphone with vehicle telematics hardware provided by LexisNexis or provided by third parties.  For example, LexisNexis provides "installation instructions" that describe how to install and pair an OBD-II

device with a Bluetooth-enabled smartphone for the collection and display of data.  *See* Exhibit K.

<strong><u>SEVENTH CAUSE OF ACTION</u></strong><br><strong>(Infringement of the '522 Patent)</strong>

149.    Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

150.    The '522 Patent, titled "Vehicle Monitor," was duly and legally issued on May 15, 2012 to Maurice Tuff, and is currently in full force and effect and has been since the date of issuance.

151.    Upon expiration of the API License Agreement and the D&S Agreement, LexisNexis continued selling, offering to sell, and/or imported hardware, systems, and software which infringe and/or the use of which by LexisNexis and/or its customers infringe the '522 Patent.

152.    LexisNexis sells, offers to sell, and/or imports these hardware and software systems with actual knowledge of the '522 Patent and of the hardware elements and method steps which constitute infringement of the '522 Patent at least as of December 20, 2012. The software and products offered for sale, sold, and/or imported into the United States include LexisNexis Telematics Mobile and/or LexisNexis Telematics Driver, which in conjunction with the other Accused Products is capable of retrieving and displaying automotive sensor information.

153.    A representative claim of the '522 patent and a chart showing how the Accused Products infringe and/or the use of which by LexisNexis and/or its customers infringe the '522 Patent is provided below.

| **Claim 12** | |
|---|---|
| A system for monitoring a vehicle, the system comprising: | A smartphone running LexisNexis Telematics Mobile or LexisNexis Telematics Driver in combination with an ODB-II device attached to a vehicle's ODB-II port and in communication with the smartphone is a "system for monitoring a vehicle." |
| a sensor unit configured to collect a vehicle statistic; and | An ODB-II compatible device is a "sensor unit configured to collect a vehicle statistic." |
| a portable device comprising: | The smartphone is a "portable device." |
| a processor configured to request and receive the vehicle statistic from the sensor unit; | The smartphone includes a processor that is capable of processing instructions for data acquisition. |
| a display configured to display the vehicle statistic; and | The smartphone includes a display for displaying a vehicle statistic. |
| a transceiver configured to wirelessly communicate with the sensor unit; | The smartphone includes a Bluetooth transceiver configured to wireless communicate with the ODB-II device. |
| wherein the processor is configured to store a count of the number of times the sensor unit has been connected to the vehicle, request and receive the count at a first time, request and receive the count at a second time, compare the count received at the first and second times; and display a tampering signal if the count received at the first time is not equal to the count received at the second time. | The smartphone includes a processor that is capable of performing a tamper check. |

154.    LexisNexis, since at least December 20, 2012, had actual knowledge of the '522 Patent. LexisNexis had actual knowledge that, by continuing to use the technology provided by Root Four after the expiration of the parties' agreements, it was engaging in infringing activities. LexisNexis, therefore, specifically intended to engage in infringing actions.

155.    LexisNexis provides its customers and end-users with instructions and FAQs that describe how to troubleshoot issues related to the collection of data using a mobile app and an OBD-II compatible vehicle sensor device.  A true and correct copy of such an FAQ posted on the LexisNexis website is attached as Exhibit L.

156.    Plaintiffs have been damaged as a result of Defendant's acts of patent infringement in an amount to be determined at trial.

157.    Plaintiffs will suffer imminent and irreparable injury unless this Court enjoins LexisNexis from further acts of infringement.

158.    Defendant's acts of infringement have been carried out deliberately and willfully and without the consent of Plaintiffs.

159.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by marking their products with the '375 Patent.

160.    This is an exceptional case entitling Plaintiffs to an award of attorneys' fees under 35 U.S.C. § 285.

161.    In light of the above facts and allegations, Defendant LexisNexis is infringing and has infringed the '522 Patent in violation of 35 U.S.C. § 271, by developing, using, offering to sell, and/or selling in the United States or importing into the United States computer software and/or hardware and/or systems, and/or by engaging in or practicing in the United States methods or processes covered by the '522 Patent.

162.    Defendant LexisNexis is infringing and has infringed the '522 Patent by offering to sell or selling within the United States or importing into the United States a component of a product or system that falls within the scope of the '522 Patent, or a material or apparatus for use in practicing a method or process that falls within the scope of the '522 Patent, constituting a material part of the '522 Patent, knowing the same to be especially made or especially adapted for use in an infringement of the '522 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

163.     Defendant LexisNexis infringes the '522 Patent by actively inducing direct infringement of the '522 Patent by third parties.

164.     Defendant LexisNexis actively encourages its customers to purchase third party equipment for uses which contribute to the direct infringement one or more claims of the '522 Patent.

165.     Defendant LexisNexis is selling, offering for sale, importing and has sold, imported, and delivered software and hardware products and systems to customers inside the United States and this District which are used by those customers to directly infringe at least one claim of '522 Patent.

166.     Defendant LexisNexis actively induces its customers to directly infringe systems and methods covered by the '522 Patent by encouraging and training those customers to combine software (e.g., the LexisNexis Telematics Mobile app) running on a smartphone with vehicle telematics hardware provided by LexisNexis or provided by third parties. For example, LexisNexis provides "installation instructions" that describe how to install and pair an OBD-II device with a Bluetooth-enabled smartphone for the collection and display of data.  *See* Exhibit K.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court grant the following relief:

a.     Render judgment in favor of Plaintiffs and against Defendant LexisNexis Risk Solutions, Inc.;

b.     Declare that Maurice Tuff is at least a co-inventor of the '495 and '957 Patents and any patents or applications related thereto;

     c.     Order the Director of the U.S. Patent and Trademark Office, pursuant to 35 U.S.C. § 256, to add Maurice Tuff as at least a co-inventor to the '495 and '957 Patents and any patents or applications related thereto;

     d.     Declare that Gregory Browne is at least a co-inventor of the '495 and '957 Patents and any patents or applications related thereto;

     e.     Order the Director of the U.S. Patent and Trademark Office, pursuant to 35 U.S.C. § 256, to add Gregory Browne as at least a co-inventor to the '495 and '957 Patents and any patents or applications related thereto;

     f.     Declare that Ash Hassib, Charles Kaminski, and/or Aaron Pierce are not co-inventors of the '495 and '957 Patents;

     g.     Order the Director at the U.S. Patent and Trademark Office, pursuant to 35 U.S.C. § 256, to remove Ash Hassib, Charles Kaminski, and/or Aaron Pierce as co-inventors to the '495 and '957 Patents and any patents or applications related thereto;

     h.     Declare that Root Four is sole or partial owner of an undivided whole of the '495 and '957 Patents;

     i.     Order the assignment and transfer to Root Four of all rights, benefits, privileges, contracts, licenses, grants, investment, profits, gains, income, business, goodwill and any other benefits flowing from the '495 and '957 Patents and any patents or applications related thereto;

     j.     Award in an amount to be determined at trial, plus interest, punitive damages, and consequential damages resulting from Defendant's breaches;

     k.     Enjoin LexisNexis from disseminating any of Root Four's confidential information without Root Four's express, written consent;

l.      Declare that Defendant has been and is infringing the Patents-in-Suit;

m.      Preliminarily and permanently enjoin Defendant and its officers, agents, and employees and all others in concert or participation with them from further acts of infringement of the Patents-in-Suit under 35 U.S.C. § 283;

n.      Order Defendant to file with this Court and serve on Plaintiffs within thirty (30) days after service of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with this injunction ordered by this Court;

o.      Award damages adequate to compensate them for Defendant's infringement of the Patents-in-Suit, together with interest and costs under 35 U.S.C. § 284;

p.      Award Plaintiff such other and further relief as the Court may deem necessary, just or appropriate;

q.      Awarded treble the damages they have incurred by reasons of Defendant's acts of deliberate and willful infringement of at least some of the Patents-in-Suit under 35 U.S.C. § 284;

r.      Declare this litigation to be an "exceptional case" and Order Defendant to pay Plaintiffs' reasonable attorneys' fees in connection with this action as provided in 35 U.S.C. § 285;

s.      Order Defendant to pay all of Plaintiffs' attorney's fees, costs and expenses, including expert witness fees, pursuant to MNDA § 9; and

t.      Award Plaintiffs such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 27, 2016

FOX ROTHSCHILD, LLP
By: /s/ Christopher R. Kinkade
    Christopher R. Kinkade
    William R. Hansen
    Ryan N. Miller
    V. Chisara Ezie
    100 Park Avenue Suite 1500
    New York, New York 10017
    Telephone: (212) 878-7900
    Facsimile: (212) 692-0940